FILES v. BROWN (two cases).

(Circuit Court of Appeals, Eighth Circuit. July 14, 1903.)

No. 1,870.

1. APPEALS AND WRITS OF ERROR—FUNCTION IN FEDERAL COURTS.

In the national courts final decrees and orders in equity cannot be reviewed by writs of error, nor can final judgments or orders at law be successfully challenged by appeals.

2. SAME—PETITION AND ORDER AVOIDING JUDICIAL SALE.

A petition to set aside an order of court for the sale of the property of an insolvent bank by a receiver under the national banking act, and to rescind the sale effected under the order, and an order which grants the relief sought by such a petition, constitute proceedings in equity, and they are reviewable by appeal only.

8. JUDICIAL SALES IN EQUITY—EFFECT BEFORE CONFIRMATION.

In a sale by a master or receiver under an order or decree in equity which contemplates a subsequent report and an order of confirmation, a bidder becomes a purchaser when the officer announces the sale to him. Thereafter he is liable to be compelled to complete his purchase, and such a sale will not, before confirmation, be opened for bidders in the absence of fraud or of misconduct in the sale. It will not be set aside for inadequacy of price unless the inadequacy is so great as to shock the conscience.

4. SAME—SUBSEQUENT CONFIRMATION—NECESSITY.

When the bid of the proposing purchaser is reported to the court by the master or receiver in the first instance, and the price to be paid and the purchaser who is to pay it are specified in the order which empowers the officer to accept the bid, to make the sale and to convey the property, the sale is final, when the officer has exercised the power granted him by the order, received the price, and conveyed the property.

5. SAME—RESCISSION—WHEN ALLOWED.

In the absence of fiduciary relations or extraordinary circumstances, courts and their officers are as firmly bound by their executed sales, both in morals and in law, as private citizens, and they ordinarily have no right or privilege to rescind them upon any ground which is not equally available to a private party.

6. RESCISSION OF CONTRACTS—FACTS WARRANTING MUST CLEARLY APPEAR.

The complainant must establish the essential facts of his cause of action for rescission of a contract with clearness and certainty.

7. JUDICIAL SALE—RESCISSION—INADEQUACY OF PRICE.

The fact that $3,200 will probably be paid out of an insolvent estate upon certain collaterals pledged to secure a judgment which was sold

---

¶ 3. See Judicial Sales; vol. 31, Cent. Dig. § 77.

by a receiver to a purchaser for $25, pursuant to an order of the court, does not so severely shock the conscience of a chancellor as to warrant a rescission of the sale, under this state of facts: Successive receivers had held the claim evidenced by the judgment for nine years, and had collected nothing upon it. The judgment debtor had no property, and the judgment was worthless unless the collaterals were valuable. One of the receivers proved the collaterals several years before the sale of the judgment, and they were allowed as a claim against the insolvent estate they charged; but no one ever collected anything upon them, and the succeeding receivers were ignorant of their existence. One of these offered the judgment for sale at auction, but could not sell it, for want of bidders. Some two years after this offer the purchaser tendered a bid of $25 for it to the receiver, and the Comptroller, the court, and the receiver accepted the offer and assigned the judgment. The value of the judgment and the collaterals was too uncertain, and contingent upon future collection from the insolvent estate, to warrant rescission.

8. SAME—FAILURE OF VENDEE TO COMMUNICATE INFORMATION AS TO PROPERTY PURCHASED.

No duty is imposed upon a purchaser, by the mere relation of vendee and vendor, to communicate to his seller information of which the latter is ignorant, relative to the character or value of the property the purchaser is buying; and the failure to do so furnishes no ground for rescinding a sale, or for canceling an order of court which authorizes it.

9. PRACTICE IN EQUITY—ANSWER AFTER DEMURRER TO PETITION OVERRULED.

After a demurrer to a petition to rescind a sale and to cancel the order which authorized it is overruled, the vendee has a right to answer the petition.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.   •

On October 18, 1902, Edwin F. Brown, the receiver of the First National Bank of Little Rock, Ark., under the national banking act, filed his petition in the Circuit Court for the Eastern District of Arkansas, in which he prayed for an order of that court directing him to accept a bid of $25 made by A. W. Files, the appellant, for a judgment of $9,230.09 against J. G. Kelso, which was one of the assets of the bank, and commanding him to make the sale of and to assign the judgment to Files. On the same day the court authorized this receiver, by an order in the usual form, to accept the $25 bid by Files, and to sell and assign the judgment to him, and the receiver complied with the order. Afterwards, and on November 8, 1902, the receiver of the bank filed a petition in the same court to rescind this sale, which had been consummated on October 18, 1902. On the same day that this petition was filed, Files, the purchaser, demurred to the petition. His demurrer was overruled, he prayed leave to answer the petition, his prayer was denied, and the court entered an order which was, in legal effect, a decree that its order of October 18, 1902, was revoked, set aside, and held for naught, and that the $25 obtained by the receiver for the sale of the judgment should be returned to Files. In other words, it rendered a complete decree of rescission of an executed sale. This order or decree is assailed by the appellant on the ground that the court erred (1) in overruling the demurrer to the petition upon which it is based; and (2) in refusing the appellant permission to answer the petition after his demurrer was overruled.

In the petition for rescission which conditions the answers to the objections of the appellant to the proceedings below, the receiver alleged the existence of these facts: The First National Bank of Little Rock became insolvent and went into the hands of a receiver, under the act for the establishment of national banks, in the year 1893. For some time prior to July 1, 1899, when

he resigned his position, S. R. Cockrill was the receiver of the property of this bank. He died in the year 1901. When Cockrill resigned, H. F. Auten succeeded him. Auten resigned in August, 1901, and the appellee, Edwin F. Brown, was appointed, and has served in his place since that date. At some time while Cockrill was receiver he held the judgment for $9,230.09 against J. G. Kelso which is in controversy here. The debt evidenced by this judgment was partially secured by the pledge of certain collateral promissory notes made by Thomas H. Allen & Co., who were insolvent, and whose assets were also in the hands of a receiver. Cockrill proved these notes in the receivership of Allen & Co., and received certificates of their allowance as claims against the estate of Allen & Co., from M. B. Trezevant, the receiver of that estate. But when Cockrill resigned he did not deliver these certificates to his successors in office, and they did not know of the existence of these collaterals until after the judgment was sold and assigned to the appellant. On December 11, 1899, the receiver of the bank offered this judgment and all the remaining property of the insolvent bank for sale at public auction pursuant to a proper order of the Circuit Court, but the judgment was not sold, because it was so worthless that no one made a bid for it. In October, 1902, the appellant, A. W. Files, offered the receiver of the bank $25 for this judgment. The receiver reported this bid to the Comptroller of the Currency, and the latter referred it back to the receiver, with instructions to him to use his own judgment in the matter, and to sell the judgment against Kelso for the amount offered by Files, if, in his opinion, that was the best disposition that could be made of it. Thereupon, on October 18, 1902, the receiver presented his petition to the court for an order to accept this bid of Files and to consummate the sale. In this petition he set forth the fact that this judgment was not sold, for want of bidders, at the auction sale of the other assets of the bank in 1899; that Files now offered him $25 for it; that he had reported this bid to the Comptroller, and the latter had instructed him to accept it, if, in his opinion, this was the best that could be done in the premises; and that it was his opinion that it was for the best interests of the creditors of his trust that this offer of Files should be accepted. He prayed for an order authorizing him to sell the judgment to Files for $25. On the same day the court ordered that the receiver be authorized to sell, assign, and set over the judgment to Files upon the payment by him of the sum of $25; and the receiver thereupon duly assigned the judgment to the appellant, and accepted from him the $25 he offered in full payment for the assignment of the judgment. After this sale was completely executed the receiver of the bank learned of the pledge of the promissory notes of Allen & Co. to secure the debt evidenced by the judgment, but, according to his petition, he has been and is unable to learn or to state the exact value of these notes, or the probable amounts which will be distributed thereon; but he has been "led to believe that there are now funds to be distributed amounting to about $1,200, and that there will be further funds distributed to the probable amount of $2,000." He alleges that in this state of the case he offered to return the $25 to Files, and the latter refused to receive it. He also alleges in this petition for rescission that, before and at the time of the sale of the judgment to him, Files knew of the existence of the collateral notes, of the existence of the certificates of allowance, and of their probable value, and that he failed to disclose these facts to the receiver before the sale was effected. He also alleges that "the said certificates, having been received as assets, could not be sold or assigned except by authority of the Comptroller of the Currency, and under a proper order of a court of competent jurisdiction, and that, so far as plaintiff can learn, no such order or authority was had or received."

A. W. Files, in pro. per.

W. F. Hill, H. F. Auten, J. M. Moore, and W. B. Smith, for appellee and defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The main questions in this case are: Did the facts set forth in the petition for avoidance of the order and for rescission of the sale entitle the appellee to that relief? And had the appellant the right to answer the petition after his demurrer to it was overruled? There are, however, one or two preliminary issues, the disposition of which will serve to disclose the real character of the controversy before us, and to facilitate its discussion.

The appellant has taken an appeal, and has also sued out a writ of error to reverse the same order. This is a permissible practice where counsel are in doubt which course to pursue, and the appellate court will judge the proceedings below in accordance with the rules of that method of review applicable to the nature of the case presented. Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81, 86, 49 C. C. A. 229, 234; McFadden v. Milling Co., 97 Fed. 670, 672, 38 C. C. A. 355, 357; Hurt v. Hollingsworth, 100 U. S. 100, 102, 25 L. Ed. 569. But final decrees and orders in equity cannot be reviewed by writs of error, nor can final judgments or orders at law be successfully assailed by appeals. Highland Boy Gold Min. Co. v. Strickley, 116 Fed. 852, 855, 54 C. C. A. 186, 189. Hence it becomes necessary before entering upon the merits of the questions at issue to determine whether this is a proceeding at law or in equity, and whether it may be reviewed by a writ of error or by appeal. The difference between actions at law and suits in equity is matter of substance, not of form. It inheres in the natures of the causes of action, in the principles which control and in the remedies which follow them, and it cannot be eradicated either by a change of form or by the abolition of forms. A legal cause of action cannot be maintained in equity, because there is an adequate remedy for it at law, and it is only where there is no such remedy that relief in equity may be successfully sought. Equitable causes of action are not available at law, because they invoke the judgment and appeal to the conscience of the chancellor, and the free exercise of that judgment and conscience is prohibited in actions at law by the rule which entitles every party to a trial of all the issues of fact by a jury. Highland Boy Gold Min. Co. v. Strickley, 116 Fed. 852, 854, 54 C. C. A. 186, 188, and cases there cited. What, then, is the character of the cause of action set forth in the petition of the appellee, and what the nature of the relief he seeks? Are they legal or equitable? The petition contains a statement of facts upon which the petitioner seeks to obtain from the court the avoidance or cancellation of the order for the sale of the judgment, which is one of the appellant's muniments of title, the rescission of the sale which rests upon that order, and the restoration of the parties to the situation which they occupied before the sale was made, and this was the relief which was granted by the court below. In effect, the petition was a bill in equity to cancel a decree for and an order confirming a sale, and to rescind the executed contract made upon the faith of it. It states no cause of action cognizable by a court of law, and it invokes no remedy which such a court has jurisdiction to administer. Bills, petitions, and proceedings

to cancel or avoid judgments, orders, deeds, or other instruments which form muniments of title, and to rescind sales based upon them, fall within the exclusive jurisdiction of courts of chancery, and are only cognizable in equity in the courts of the United States. Pomeroy's Eq. Jur. §§ 188, 1375, 1377; 2 Story's Eq. Jur. §§ 694–702. The petition for cancellation of the order, and the order of cancellation and rescission which followed it, were proceedings in equity, and they are reviewable by appeal only. The writ of error is therefore without office here. It must be dismissed.

Counsel for the receiver argue that the sale of the judgment never became final, because there was no order of confirmation of it; and they invoke the old rule which once prevailed in England, that, where the court of chancery directs a master to make a sale under a decree or order, it is his duty to report his proceedings and the highest bid he receives to the court, that the court may, in its discretion, then receive other bids, and that the sale is not complete until it is subsequently confirmed by the order of the court. Chief Justice Waite stated the rule in this way:

"A bidder at a sale by a master under a decree of court is not considered a purchaser until the report of sale is confirmed, and he cannot be compelled to complete his purchase until the confirmation of the report—that is, until his bid has been in some form accepted by the court—as the court stands in the place of the vendor, using the master to receive and report the bids." Mayhew v. West Virginia Oil & Oil Land Co. (C. C.) 24 Fed. 205, 215.

There are two reasons why the old rule in chancery has no application to the sale under consideration: The first is that this old rule in chancery has never prevailed in this country, and the rule is almost universal that, at a sale by a master or receiver under an order or decree in equity which contemplates a subsequent report and a confirmation of the sale, a bidder becomes a purchaser when the officer announces the sale to him. Thereafter he may be compelled to complete his purchase and pay the price which he offered. Such a sale will not, before confirmation, be opened for bidders, in the absence of proof of fraud or of misconduct at the sale. It will not be set aside for inadequacy of price unless the inadequacy is so great as to shock the conscience. Graffam v. Burgess, 117 U. S. 180, 191, 192, 6 Sup. Ct. 686, 29 L. Ed. 839; Pewabic Min. Co. v. Mason, 145 U. S. 349, 367, 12 Sup. Ct. 887, 36 L. Ed. 732. The old chancery rule has been abolished, even in England, and the practice there has been made to conform to that in this country by an act of Parliament. Act 1867, 30 & 31 Victoria, c. 48, § 7; 1 Sugden on Vendors (14th Ed., by Perkins) 114, note "a." There is another reason why this sale was complete. The reason of the old rule in chancery that sales made by a master under an order or decree of court are not final unless confirmed is that the court is the vendor, and it cannot know what the offers or bids will be at a sale at auction; that the master is its agent to receive and report the bids, without authority to accept any of them. Hence it is not until the best bid has been reported to the court, and it has accepted it, and confirmed the sale by an order directing the master to complete it, that it becomes final. The reason of this rule ceases to be in a case like that at bar, where the bid is reported to the court in

the first instance, and it accepts it and orders the master or receiver to take the price offered and to convey the property to the purchaser. And where the reason of a rule no longer exists, the rule itself ceases to be. So that, even if the old chancery rule were in force, it would have no application to the sale in hand. The order to the receiver to sell and convey the property to a purchaser named, for a price fixed in the order, is itself both an acceptance of the bid and a confirmation of the sale, so that when the order has been executed the court is as firmly bound in law and in morals as any private citizen by his executed sale.

Cases sometimes arise where sales by ignorant or negligent trustees or masters to purchasers who hold fiduciary relations to some of the interested parties, or who have special means of knowledge of the property and its value, are avoided for gross inadequacy of price on slight evidence of fraud or mistake, when such relief would hardly be granted in sales between private citizens. Turner v. Harvey, Jacob's Rep. 169, 177. But this is not a case of that character. The books and papers of the bank were in the possession of the receiver, and not of this purchaser. The means of learning the action of the receiver of Allen & Co. were as accessible to him and to the court as to the appellant. It was the predecessor in office of the appellee, and not the appellant, who first moved the court to sell the judgment. He offered it for sale at auction in the year 1899, but there were no bidders to take it. This judgment was apparently continually for sale from that date until October, 1902. Then the appellant offered the receiver $25 for it, but he filed no petition, made no representation, and took no action to induce either the court or the receiver to effect the sale. It was the receiver of the bank who made every move, who secured the authority of the Comptroller and of the court to accept the bid, and who made the sale; and there is no more reason why he, or the court for which he was acting, should be relieved from the executed contract which they deliberately made, than there would be that a private individual should be relieved from an executed sale made under similar circumstances.

When a bid by a proposing purchaser is reported to the court by a receiver or master, and the court, by its order, authorizes the officer to accept payment of the price offered and to convey the property to the purchaser and he does so, the sale is complete, no further order of confirmation is essential and the court is as firmly bound in law and in morals as any private citizen would be by the executed sale. The result is that when the receiver filed his petition to rescind the sale, and to avoid the order which authorized it, Files was the owner of the judgment, the court was the owner of the $25 which the purchaser had paid for it, the sale was executed, and the court and its receiver had no higher right than any private vendor to undo their contract, and to take from the vendee the property which he had purchased.

We are now ready to consider the sufficiency of the facts alleged in the petition to warrant the order from which this appeal is taken, and the question is, what facts are here averred which would entitle a private citizen to relief of this nature if he had accepted the offer of

the appellant, and had completed the sale and assignment of the judgment under the circumstances pleaded in the petition? The general grounds for rescission of contracts of sale are fraud, accident, and mistake. What facts are stated in the petition to establish a cause of action upon any of these grounds? Counsel for the receiver seek to sustain the order below on the ground that the petition shows inadequacy of price for the sale of the judgment, and a failure of the appellant to impart to the receiver his knowledge of the existence and value of the collaterals before the sale was effected, and for no other reason. If there is one proposition in the law regarding the rescission of contracts and the cancellation of muniments of title that is established beyond doubt or cavil, it is that the complainant must establish the essential facts of his cause of action with clearness and certainty, to entitle him to any relief. Chicago, St. Paul, M. & O. Ry. Co. v. Belliwith, 83 Fed. 437, 440, 28 C. C. A. 358, 361, 362; Maxwell Land Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 30 L. Ed. 949; Colorado Coal Co. v. United States, 123 U. S. 307, 316, 8 Sup. Ct. 131, 31 L. Ed. 182; Howland v. Blake, 97 U. S. 624, 626, 24 L. Ed. 1027; Pomeroy's Eq. Juris. § 859.

Does this petition clearly disclose any inadequacy of price? It is conceded that the judgment against Kelso was in itself worthless, and that if it had any value it was by virtue of the collaterals pledged to secure it. Therefore the assignment of the collaterals by means of the assignment of the judgment and the value of the collaterals are indispensable facts to establish the inadequacy of price. But the petition avers that the collaterals were in the form of certificates of the receiver of Allen & Co.; that they were a part of the estate of the bank; that they "could not be sold or assigned except by authority of the Comptroller of the Currency, and under a proper order of a court of competent jurisdiction; and that, so far as plaintiff can learn, no such order or authority was had or received." In other words, the receiver alleged that the collaterals never passed to the appellant by the assignment of the judgment, and, if we take him at his word, Files received nothing but the judgment itself, which was worthless, and there is no ground for avoiding the assignment. It is not probable that this averment of the petition can be ultimately sustained. But the receiver certainly fails to make it clearly appear by his pleading that the certificates passed by the assignment, when he alleges that they failed to pass, and the sale ought not to be rescinded until he concludes to which horn of this dilemma he will cling.

Moreover, conceding that the title to the certificates passed to Files by the assignment of the judgment, the petition fails to show that these certificates, or the notes which they represent, had, or ever will have, any greater value than the $25 which the appellant paid for them. The only averments upon this subject are that the certificates are evidence of claims based upon the collateral notes allowed against the insolvent estate of Allen & Co., that the receiver does not know their amount, and "that while he is unable to learn or state the exact value of these collateral notes, or of the probable amounts which will be distributed thereon from the estate of Thomas H. Allen & Company, yet he is led to believe that there are now

funds to be distributed amounting to about $1,200, and that there will be further funds to be distributed to the probable amount of $2,000." There is no averment of the number or the names of the creditors of the estate of Allen & Co., and nothing to show to whom these funds are to be distributed. Counsel argue the case as though the petition contained an allegation that there would probably be $3,200 to be paid upon the collateral notes or certificates, but the only statement upon this subject in the petition is quoted above. The allegation is that the petitioner cannot learn or state the probable amount that will be distributed from the estate of Allen & Co. upon the collateral notes, but that the amount of funds now in that estate to be distributed is $1,200, and that there will probably be $2,000 more to be distributed. The natural and rational reading and meaning of the averment is that he cannot learn the probable amount to be distributed on the collaterals, but that the probable amount to be distributed to all the creditors of Allen & Co., will be $3,200. As the petition contains no allegation of the amount of the collaterals or of the amount of the indebtedness of Allen & Co., it furnishes no data from which the value of the collaterals, or the probable amount that will be received thereon, can be deduced. And even if the paragraph of the petition which has been quoted is susceptible of the interpretation that there will probably be $3,200 for distribution on the collateral notes, that construction is a strained and doubtful one, and the averment is altogether too ambiguous and uncertain upon which to found a decree or an order to deprive a citizen of his property.

Moreover, if the petition clearly stated that $3,200 would probably be paid upon the collaterals by the estate of Allen & Co., this averment would not have shown any gross inadequacy of price. An averment that an amount will probably be realized from a credit at some future time is not an averment that the credit is or ever was of a value equal to that amount. The indefinite and unlimited future and the chances inhering in the probability must be discounted to learn the present or past value of the security, and as there is no averment in this petition of the time in the future when the $3,200 will probably be paid, or of the facts which condition the probability of its payment, the statement of its probable payment would be too indefinite and uncertain from which to deduce the conclusion that there was any shocking inadequacy of price in the $25 which was paid for it. And inadequacy of price, unless it is so great as to shock the conscience, or unless there are additional circumstances of unfairness, furnishes no ground for the rescission of a sale, or for the cancellation of the order upon which it rests. Graffam v. Burgess, 117 U. S. 180, 192, 6 Sup. Ct. 686, 29 L. Ed. 839; Livingston v. Byrne, 11 Johns. 555, 566; Eberhardt v. Gilchrist, 11 N. J. Eq. 167, 170; Marlatt v. Warwick, 18 N. J. Eq. 108, 110, 111; Kloepping v. Stellmacher, 21 N. J. Eq. 328, 329; Carson's Sale, 6 Watts, 140, 147; House v. Walker, 4 Md. Ch. 62, 63; White v. Floyd, Speer, Eq. 351, 355; Hart v. Bleight, 3 T. B. Mon. 273; Tripp v. Cook, 26 Wend. 143, 149; Collier v. Whipple, 13 Wend. 224, 235.

Counsel, however, insist that the petitioner was entitled to the rescission because his petition contains allegations that the vendee was

aware of the existence and of the value of the collaterals, and failed to impart his information to the receiver before the sale. There are two answers to this contention:

First. The failure of the petitioner to clearly aver the value of the collaterals deprives his allegations that Files knew and failed to state their existence and value of all effect, for, if the collaterals had no value, or but little value, their existence and their value were immaterial, and a statement of these facts would have been of no benefit to the receiver.

Second. A suppression or concealment of facts forms no ground for rescission or for the cancellation of a muniment of title unless it is a violation of some duty, and hence some kind of a fraud. If any duty to communicate this information had been imposed upon the appellant, either at law or in equity, his silence might have been fatal to his purchase. But he occupied no fiduciary relation to the receiver or to the court. They asked him no questions. He owed them no duty to speak. A vendor is presumed to have special knowledge of his own property, and the duty to inform a purchaser of latent defects in it sometimes rests upon him. But the appellant was a vendee. No such duty rests upon a buyer because he has the right to presume that a vendor knows his own property, its title, its character, and its value, and hence he may safely buy it in silence at any price which the vendor is willing to accept. It is not the duty of a purchaser to communicate to his vendor information of which the vendor is ignorant relative to the character or value of the property which he is buying, and a failure to do so furnishes no ground for rescinding a sale, or for canceling an order of court which authorizes it. Fox v. Mackreth, 2 Brown's Ch. Rep. 319, 333, 334; Turner v. Harvey, Jacob's Rep. 167, 177; Laidlaw v. Organ, 2 Wheat. 178, 194, 4 L. Ed. 214; Neill v. Shamburg, 158 Pa. 263, 270, 27 Atl. 992; Blydenburgh v. Welsh, Baldw. 331, 337, Fed. Cas. No. 1,583; Moses v. Katzenberger & Sons, 84 Ala. 95, 98, 4 South. 237; Kohl v. Lindley, 39 Ill. 195, 201, 89 Am. Dec. 294. The illustration and statement of this rule, which has been quoted and approved in the text-books and decisions in England and America for more than a century, was made by Lord Chancellor Thurlow in 1788, in Fox v. Mackreth, supra, in these words:

"Suppose, for instance, that A., knowing there to be a mine in the estate of B., of which he knew B. was ignorant, should enter into a contract to purchase the estate of B. for the price of the estate, without considering the mine; could the court set it aside? Why not, since B. was not apprised of the mine, and A. was? Because B., as the buyer, was not obliged, from the nature of the contract, to make the discovery. It is therefore essentially necessary, in order to set aside the transaction, not only that a great advantage should be taken, but it must arise from some obligation in the party to make the discovery. The court will not correct a contract merely because a man of nice honor would not have entered into it. It must fall within some definition of fraud. The rule must be drawn so as not to affect the general transactions of mankind."

The case made by the petition in hand does not fall within any definition of fraud. The purchaser owed the receiver and the court no duty to speak. His silence was no wrong, and it furnishes no basis

for a rescission of the sale, or for the avoidance of the order of the court which directed it. The petition stated no cause of action, and the demurrer to it should have been sustained.

Not only this, but, if the demurrer was properly overruled, the appellant should have been permitted to answer the petition. This is a proceeding in equity. The petition is in effect a bill in equity to rescind a sale and to cancel a muniment of title. The relief which was granted deprived a citizen of his property. If the proceeding did not fall directly under the rules and practice in equity, it was so analogous to a suit in equity that no radical departure from that practice should have been permitted. The thirty-fourth rule in equity provides that:

"Upon the overruling of any plea or demurrer the defendant shall be assigned to answer the bill or so much thereof as is covered by the plea or demurrer on the next succeeding rule day or at such other period as consistently with justice or the rights of the defendants the same can in the judgment of the court be reasonably done."

This is a just and reasonable rule. It gives to a defendant the opportunity and confers upon him the right to answer the averments of his adversary after he has unsuccessfully challenged their legal sufficiency. Bates on Federal Equity Procedure, § 215; United States v. Dalles Military Road Co., 140 U. S. 599, 616, 11 Sup. Ct. 988, 35 L. Ed. 560; Wooster v. Blake (C. C.) 7 Fed. 816; McVeagh v. Denver City Waterworks Co., 85 Fed. 74, 29 C. C. A. 33; Zimmerman v. So Relle, 25 C. C. A. 518, 522, 80 Fed. 417, 421.

The order below is reversed, and the case is remanded to the Circuit Court, with instructions to sustain the demurrer, to allow the receiver to amend his petition in accordance with the provisions of rule 35 in equity, and to take further proceedings not inconsistent with the views expressed in this opinion.