## In re Central Trust & Savings Company

*Samuel Kravitz*, for petitioner.
*Edwin C. Emhardt*, contra.

McDEVITT, P. J., May 12, 1941.—On March 31, 1941, the Secretary of Banking, in his capacity as receiver of

Central Trust & Savings Company, acting through his deputy receiver, H. J. McGowan, presented a petition to this court, as required by section 718A of the Department of Banking Code of May 15, 1935, P. L. 565, seeking leave to sell premises 905-07-09 South Fifth Street, Philadelphia, Pa., to Samuel Driban, or his nominee, for the sum of $6,500 in cash.

Notice of the proposed sale was given by advertisement conforming to the requirements of the code, setting forth the date, time, and place when and where the above-mentioned petition would be considered by the court.

No one appeared at the hearing to present any objection to the proposed sale and, after considering the facts set forth in the petition, the court, deeming $6,500 to be a fair and reasonable price for the property, granted the prayer of the petition on March 31, 1941.

On April 29, 1941, prior to settlement between the Secretary of Banking and Samuel Driban, one Irvin Sobel, who had previously made an offer for the premises, but who had declined to bid higher than the $6,500 offered by Samuel Driban, made an offer of $7,200 in cash for the premises in question, and thereupon Irvin Sobel presented to this court his petition averring that he desired to purchase premises 905-07-09 South Fifth Street, Philadelphia, Pa., for $7,200 in cash, and praying that a rule be granted on the Secretary of Banking, as receiver of Central Trust & Savings Company, to show cause why the order approving the sale to Samuel Driban should not be vacated, and the sale to Irvin Sobel for $7,200 in cash authorized.

The court granted the rule and the matter was duly argued before the court.

The question is whether, when the Secretary of Banking, as receiver of a closed bank, enters into an agreement to sell a parcel or parcels of real estate owned by that bank, and when the court having jurisdiction of the receivership approves the sale of the particular property to a named purchaser at a specified price, can a subse-

quent and higher offer for the same property be entertained where there is neither allegation nor proof that the prior sale was attended by fraud, accident, mistake or other considerations that would ordinarily move a court of equity to set aside a sale of real estate?

The Department of Banking Code of May 15, 1933, P. L. 565, prescribes a specified procedure to be followed by the Secretary of Banking and the courts in sales of real estate belonging to a closed institution of which the Secretary of Banking is receiver. Section 718A of the code provides:

"The Secretary [of Banking] may, with leave of, and upon the terms and conditions prescribed by, the court, sell any real property of the institution of which he is in possession as receiver. . . .

"Every such sale of real property shall be confirmed by the court, if all the terms and conditions of its order authorizing such sale have been complied with."

No agreement to sell real estate is binding upon the Secretary of Banking unless and until he complies with the directions of the code and obtains leave of the court to make the proposed sale. And by parity of reasoning, once leave of court is duly and properly obtained, the sale does become final and binding upon the Secretary of Banking. Thereafter, he may not seek to set aside the sale except upon proof of fraud, accident, mistake, or some other cause for which equity would avoid a like sale between private parties.

It seems to us that the intent of the legislature, as expressed in section 718A of the code, is that when the court has authorized the sale that sale becomes binding upon the court as well. It will be noted that that section provides that, when the Secretary of Banking has complied with the terms and conditions of the order of court authorizing such sale, the court *shall* confirm the sale. The court is left no discretion in the matter. Thus, once the court has approved a proposed sale, such sale becomes final and, thereafter, it will not be disturbed except for

fraud, accident, mistake, or other equitable reason: In re Mechanics Trust Company, 39 D. & C. 202 (1940).

In the case of the Willow Grove Trust Company, September term, 1931, no. 14 (as yet unreported), decided March 21, 1941, the Court of Common Pleas of Montgomery County said:

"We think that a fair interpretation of the section [section 718A] requires us to hold that it was the intention of the legislature that the sale is to be considered confirmed, when the court approves the terms of the agreement of sale as submitted by the receiver. It is the doctrine of all our cases, that a sale once confirmed, may not be set aside except for fraud, accident or mistake, or, perhaps, for gross inadequacy of price."

If a sale is to be upset upon the receipt of higher offers after the court has approved it, buyers would soon become discouraged and would lose interest in any of the real estate offered for sale by the Secretary of Banking.

If, after the court's mandate to the Secretary of Banking to sell at a named price to a certain purchaser, the sale could, as a matter of course, be upset by the mere receipt of a higher offer, sales of real estate by the Secretary of Banking would become farcical and rational men would shun them and refuse to bid. The result would be that liquidation would be greatly retarded and the total cost thereof would greatly increase, so that any temporary benefit to be had from the acceptance of the increased offer would be outweighed by the resulting decrease in eventual total returns to the depositors, creditors, and shareholders of the closed bank.

There must be a point at which the sale becomes final, so that thereafter it is possible for the purchaser to act with certainty in matters relative to his purchase. Section 718A has fixed that point as the date when the court approves a proposed sale submitted to it.

However, under the particular facts of this case, the decision herein would be the same even under the rules

governing ordinary judicial sales, for where the officer of the court reports the name of the proposed purchaser to the court in the first instance, together with the property to be sold and the price to be paid therefor, and where the court authorizes the sale and conveyance of the given piece of real estate to the named purchaser at the specified price, the sale is final: Files v. Brown, 124 Fed. 133 (1903), where the court said (p. 137) :

"The reason of the old rule in chancery that sales made by a master under an order or decree of court are not final unless confirmed is that the court is the vendor, and it cannot know what the offers or bids will be at a sale at auction; that the master is its agent to receive and report the bids, without authority to accept any of them. Hence it is not until the best bid has been reported to the court, and it has accepted it, and confirmed the sale by an order directing the master to complete it, that it becomes final. The reason of this rule ceases to be in a case like that at bar, where the bid is reported to the court in the first instance, and it accepts it and orders the master or receiver to take the price offered and to convey the property to the purchaser. And where the reason of a rule no longer exists, the rule itself ceases to be. So that, even if the old chancery rule were in force, it would have no application to the sale in hand. The order to the receiver to sell and convey the property to a purchaser named, for a price fixed in the order, is itself both an acceptance of the bid and a confirmation of the sale, so that when the order has been executed the court is as firmly bound in law and in morals as any private citizen by his executed sale."

And now, to wit, May 12, 1941, the rule is discharged and the petition of Irvin Sobel is dismissed.