## S. W. GALLAND AND W. GALLAND *v.* J. L. JACKMAN.

ALTERATION APPEARING ON THE FACE OF A DEED.—Where a deed is produced in evidence by a party claiming under it, and it appears upon its face to have been altered in a particular material to his interest, and to the prejudice of the other party, it is incumbent on him to establish by satisfactory evidence that the alteration was made by the grantor, or by his authority, or the deed will be deemed, for the purposes of the action, to read as it did before the alteration was made.    .

RECITAL IN DEED AS EVIDENCE.—The recital in a deed of a valuable consideration paid by the grantee for the property thereby conveyed, is not evidence of the payment of a valuable consideration, as against strangers, or against one claiming under the grantor by a conveyance prior to the deed in which the recitals are made, or against one claiming adversely to the grantor, but such recital is evi-

dence of the payment of a valuable consideration only against those claiming under the grantor by conveyance subsequent to the same.

KNOWLEDGE OF PRIOR UNRECORDED DEED.—One who buys real estate from another, with the actual knowledge at the time of his purchase that his grantor had before that time made some kind of a conveyance of the same property to another person whose deed has not been recorded, is not a purchaser in good faith, although he did not know the kind of conveyance which had been made. This rule is the same in an action at law as in a suit in equity.

APPEAL from the District Court, Fifteenth Judicial District, Tehama County.

The facts are stated in the opinion of the Court.

*W. H. Rhodes,* for Appellant.

*George Cadwalader,* also for Appellant.

In the absence of proof to the contrary, the date of the deed is the date of its delivery. (12 Mass. 445; 4 John. 230; 4 Yeates, 278; 6 Munford, 515; Little's Select Cases, 462; 18 Metcalf, 323.)

The Court, in its findings, speaking of the conveyance from Betts to Depuy of the second story of the hotel, says of plaintiffs that " they had knowledge that Betts executed a conveyance of some kind to Depuy for the second story of the house."

This, we claim, was of itself sufficient notice to put the plaintiffs on inquiry, which, in contemplation of law, is actual notice. (*Pitney* v. *Leonard,* 1 Paige, 46; *Peters* v. *Goodrich,* 3 Conn. 146; *Booth* v. *Barnum,* 9 Conn. 286; *Hawly* v. *Cramer,* 4 Conn. 717; *Brush* v. *Ware,* 15 Pet. 112; *Jackson* v. *Cadwell,* 1 Cow. 622; *Tuttle* v. *Jackson,* 6 Wend. 212.)

By giving full effect to one of the material facts found— that is, that it was all " but one transaction in fact," it relieves the case of all difficulty, and the clear intention of the parties is carried into effect. The rule upon this subject is clearly laid down in 2 Parsons on Contracts, 15 : " The contract may be contained in several instruments, which if made at the same time between the same parties, and in relation to the same subject, will be held to constitute but one contract, and the Court will read them in such order of time and priority as

will carry into effect the intention of the parties, as the same may be gathered from all the instruments taken together."

In no sense were the plaintiffs *bona fide* purchasers.

*W. S. Long*, for Respondents.

*P. L. Edwards*, also for Respondents.

Grant that the date of the deed is *prima facie* evidence of the actual time of its execution, still the Court found the fact adversely to the appellant, and this must be held to have been from the evidence. Though it was competent for him to prove a time of execution different from that expressed, yet there is no semblance of the production of any evidence to that effect, and the actual findings are antagonistic to the appellant's theory.

It is said that the Court finds that the respondents " had knowledge that Betts had executed a conveyance of some kind to Depuy for the second story of the house,"—and this is claimed to be " sufficient notice to put the *respondents* on inquiry"—and that this, in the law, is equivalent to actual notice. Notice of what? Of a legal or an equitable title? The legal results would be very different according to the hypothesis indulged.

In this case there is neither findings nor evidence as to how the supposed notice came to the respondents. If there was any notice at all, it was actual, and mere vague reports from strangers, or mere general assertions that some other persons claim a title is not sufficient to fix a purchaser with actual notice. The findings as they are, can, therefore, in no *phase* of the case, prejudice the respondents. (2 Leading Cases in Equity, 69, note.)

Such notice in a case of this character cannot be binding, unless it proceed from a person interested in the property and in course of a treaty for its purchase. (*Kerns* v. *Swope*, 2 Watts, 78 ; *Epley* v. *Witterow*, 7 Watts, 163–7 ; 2 Sugden on Vendors, 481, 482.)

The deed from Betts to the respondents expressed a valua-

ble consideration, and was evidence of such, until the legal presumption was rebutted.

We admit that the payment of the consideration acknowledged in the deed from Betts to the respondents is only *prima facie* evidence of the fact. This presumption might have been attacked in the pleadings or proofs; but no attempt was made to do so, thus leaving the natural and legal conclusion in full force.

*Hereford & Williams,* also for Respondents.

This is an action of ejectment; and the *legal* title or right of possession only is in controversy. No *equitable* defense is set up, and consequently there is none to consider.

Then the inquiry to be made is: Where did the legal title rest at the date of this action? That query is easily answered.

Betts, prior to November 27th, 1859, being then the owner, conveyed the entire property to Depuy. On the 27th November, 1859, he executed a deed to Depuy for the upper story of the building upon the land previously conveyed by him to Depuy.

But this last deed passed nothing to Depuy; it merely attempted to vest in him that which he already had. On the 28th day of November, 1859, the *title* to the *whole* of the property, and no less, was in Depuy, and the public records so showed. On that day Depuy reconveyed the whole property, land, and house, to Betts. No other conveyance was made thereafter between Betts and Depuy, and hence the *title* to the whole rested in Betts down to the date of his deed to the plaintiff on the 1st of February, A. D. 1862, at which time, by virtue of the conveyance to plaintiff, the title to the whole property vested in him.

In our judgment the only defense which could have been attempted with the slightest hope of success, was an equitable defense with a prayer of affirmative relief to compel the execution of a deed to the defendant or his grantor (who might have defended for that purpose) by the plaintiff for the upper

story of the building. But no such defense was made, and, we presume, properly the question will not be considered in this Court.

By the Court, CURREY, J.

This action was brought to recover the possession of the second story of a brick house in the Town of Tehama, in the County of Tehama, and was tried by the Court without a jury. Both parties claimed the demanded premises from one J. M. Betts as the common source of title. The facts as they are found by the Court are in substance as follows, viz.: J. M. Betts was the owner of a lot of land in the Town of Tehama, and sold a portion of it to S. H. Depuy. By mistake the whole lot was described in the deed of conveyance instead of only the portion intended to be conveyed. This deed was recorded. Depuy and Betts then entered into a contract, by which Depuy undertook to erect, upon the land sold and intended to be conveyed to him, a hotel, and upon the other portion of the lot a store. By this contract Depuy was to have the second story of the store building, to be used as a part of the hotel. The contract was performed by Depuy. The hotel proper and the store were divided by a party wall, the centre of which was understood to be the dividing line between the store and hotel. The entrance to the second story of the store was through the hotel.

After the store had been erected and the hotel was in process of erection, the mistake in the conveyance was discovered. Depuy then conveyed by deed to Betts the land on which the store had been erected, making the centre of the division wall between the store and hotel the line of boundary between the two parcels of land, and Betts, in pursuance and fulfilment of his contract with Depuy, conveyed by deed to Depuy the second story of the store. This deed bears date November 27, 1859, and it was first recorded in April, 1862. The deed from Depuy to Betts was originally dated the "twenty-seventh" day of November, 1859, but it appeared

at the trial that the word "seventh" had been partially erased and the word "eighth" written over it, followed by the figures 28 inclosed in a parenthesis. This deed was acknowledged on the 3d day of December following, and was recorded on the 8th of the same month. As recorded, the date of the deed appeared to be of the 28th of November. After the hotel was completed Depuy leased it, except for about a month he occupied it himself, and from that time until the trial it was used as a hotel. The defendant was occupying it when this action was commenced. On the 1st of February, 1862, Betts conveyed by deed to the plaintiffs the land upon which the store was erected with the appurtenances. In this connection the Court finds that the plaintiffs had knowledge that Betts executed a conveyance of some kind to Depuy for the second story of the store, and it is also stated to be clear from the evidence that the two deeds of November, 1859, were intended, as a matter of fact, to be but one transaction; that is to say, that Depuy should reconvey to Betts that portion of the land which he had conveyed by mistake to Depuy, and Betts should convey to Depuy the second story of the store in pursuance of his contract to do so.

The statement in the case shows that the plaintiffs' deed was recorded on the 10th of February, 1862, and the deed to Depuy, under which the defendant claimed, was recorded on the 14th of April of the same year.

Before judgment was entered the defendant moved for judgment in his favor, on the finding of facts, but the Court refused to grant the motion, and gave judgment for the plaintiffs, and from this judgment this appeal is taken.

The plaintiffs based their rights to recover: *first,* on the ground that they had the only title to the demanded premises, for the reason that the defendant's lessor conveyed the same to Betts, the grantor of the plaintiffs, by the deed of November, 1859, which they contended was executed and delivered on the twenty-eighth of that month; and *second,* that if that deed was executed and delivered on the 27th of November, and the defendant's lessor, Depuy, thereby acquired title to

the premises in controversy, it was void as against the plaintiffs, who claim they were subsequent purchasers in good faith and for a valuable consideration, from the common grantor of the same land, and that the conveyance to them was first duly recorded.

The defendant, on his part, claims that the two conveyances executed in November, 1859, were part and parcel of the same transaction, and that by the deed from Betts to Depuy the latter acquired the title of the former to the demanded premises, and that such title is still subsisting and paramount.

1. The Court finds that the two deeds were intended by the parties to be but one transaction, and we are satisfied that this finding was justified by the facts disclosed. The deed from Depuy to Betts seems to have been dated originally on the 27th of November, which was the date of the deed from Betts to Depuy. Whether these deeds were dated on the same day, is a matter of some importance, as disclosing the intention of the parties thereto. The date of the deed from Depuy to Betts appears to have been changed to one day subsequent to its original date, but by whom or when does not appear. This deed was a muniment of the plaintiffs' title, and they must be presumed to have been aware of what appeared upon its face when they purchased of Betts, and we think this presumption must be regarded as conclusive. They produced it in evidence bearing the appearance upon its face of having been altered in a particular material to their interest and to the prejudice of the defendant. It was therefore incumbent on them to establish by satisfactory evidence that the alteration was made by the grantor or by his authority before the date could properly be deemed as of the 28th instead of the 27th of the month. (1 Greenleaf's Evidence, Section 564; Practice Act, Section 448.) If the execution of the deed by Betts was on the 27th, and that executed by Depuy was on the 28th of the month, and could be deemed transactions distinct and independent of each other, what motive had Betts to execute the deed of the 27th? He had long before then conveyed to Depuy, by mistake, it is true,

the portion of the lot on which the store was erected. Why should he perform the idle ceremony of executing a deed of the second story of the store to Depuy, when in fact Depuy owned it at the time? This circumstance is one of persuasive force in ascertaining the intention of the parties and a strong argument in support of the date of the deed as originally written. We are therefore led to the conclusion that by this deed of conveyance Depuy acquired the title and interest therein described.

2. Assuming that Depuy owned the second story of the store, and that he or his tenant under him had the right to its enjoyment at the time of plaintiffs' purchase, it remains to inquire whether the facts found authorize the conclusion that the plaintiffs stand in the position of subsequent purchasers in good faith for a valuable consideration, and that by force of the statute the deed of Depuy must be regarded void as against the plaintiffs as such purchasers. (Laws 1850, p. 252, Sec. 26.)

The Court fails to find that the plaintiffs paid any valuable consideration for the premises described in their deed.

The recital in the deed from Betts to plaintiffs of the receipt of a valuable consideration, does not prove it as between the plaintiffs and defendant. Such recitals are not evidence against strangers, nor against one claiming under the party executing the reciting deed by title prior thereto or adversely to him, but only against those claiming under him by title subsequent. (*Long* v. *Dollarhide*, 24 Cal. 218.)

The admissibility of a recital depends upon the same principle as the admissibility of a declaration of the person executing the reciting deed. Hence, in general, in order to determine whether a recital is evidence in a given case against a party, it is only necessary to ascertain whether an acknowledgement or confession of the person who executed the deed would be competent.

In *Jackson* v. *McChesney*, 7 Cow. 361, Mr. Justice Sutherland, in an action of ejectment, held otherwise, saying that the acknowledgment in a deed of the receipt of the consideration

is *prima facie* evidence of its payment until impeached, and that its operation is not confined to the immediate parties to the deed, but extends to any person who may seek collaterally to impeach it.   But the rule, we may safely say, is otherwise in an action at law where the question is material, as well as in a suit in equity.   In *Nolen and Thompson* v. *Gwyn*, 16 Ala. 725, the Court held that this rule was the same in a Court of law as in a Court of equity.   After a grantor has once parted with all his interest in land by deed to one, he can make no admission by deed or otherwise that would be binding on his first grantee or those who claim under him. (10 Ala. 137; 4 Ala. 264; 5 Ala. 12; 15 Ala. 9 ; 4 Watts, 359; 12 N. Hamp. 248 ; *Jewett* v. *Palmer*, 7 John. Ch. R. 65 ; *Storey* v. *Windsor*, 2 Atkyns, 630 ; *Colton* v. *Seavey*, 22 Cal. 496 ; Willard's Eq. Jur. 253.)

It is found by the Court that the plaintiffs knew that Betts executed a conveyance of some kind for the second story of the store to Depuy.   This being so, they cannot justly claim that they stand protected by the statute, because their case does not come within its letter nor its spirit.   It matters not that they did not know the kind of conveyance which Depuy had received from Betts—whether it was for an estate for years or in fee simple absolute.

In *Jackson* v. *Burgott*, 10 John. 460, Mr. Chief Justice Kent said : " It may be assumed as a settled principle in the English law, that when a subsequent purchaser, whose deed is registered, had notice, at the time of his purchase, of a prior unregistered deed, the prior deed shall have the preference, for the object of the register is to give notice to subsequent purchasers; and in the case stated the object of the Act is answered, and his purchase under such circumstances is a fraud.   It is considered as done *mala fide*, by assisting the original vendor to defraud the prior vendee, and the Courts will not suffer a statute made to prevent fraud to be a protection to fraud." Other authorities of like import might be cited in support of the same doctrine, but the principle on which it is founded is

Opinion of the Court.

too reasonable and obvious to require for its support additional authorities.

The plaintiffs were not entitled to judgment upon the facts found by the Court, and judgment ought to have been rendered for the defendant. As the case stands we think the ends of justice would be best subserved by allowing the parties to try the cause *de novo*.

The judgment is therefore reversed and a new trial ordered.