MICHAEL G. SHONSEY, APPELLEE, V. RAY S. CLAYTON, APPELLANT.

FILED FEBRUARY 16, 1922.   No. 21750.

1.  Contracts: TIME. Time may be of the essence of a contract by an express provision to that effect, and, in the absence of waiver or estoppel, such provision will be enforced by the court.

2.  Judgment: TRANSCRIPT: LIEN. A judgment creditor, by transcripting his judgment to the district court, does not obtain a lien upon real estate, which had been conveyed to a third party by the judgment debtor, by a duly recorded deed.

3.  Vendor and Purchaser: TITLE. A title to be good or market-able must be free from reasonable doubt either in law or in fact.

4.  ———: ———. It is not necessary that such a title be shown to be bad, nor is it enough even that the court may on the

whole consider it good, if there be doubt or uncertainty about it sufficient to form the basis of litigation.

5. ———: Bona Fide Purchaser. It is a well-settled general rule, in determining whether a purchaser had notice of outstanding equities so as to preclude him from being entitled to protection as a *bona fide* purchaser, that if there be circumstances which, in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which that inquiry would give him.

6. ———: Contract: Time: Election. Though time is made of the essence of the contract, a default does not *ipso facto* terminate the contract, but only renders it voidable at the election of the party entitled to insist upon its performance.

7. ———: ———: Breach: Waiver. A purchaser who, instead of terminating the contract, acquiesces in the attempt of the vendor to perfect his title waives the right to insist upon strict performance of the contract, at least for the time reasonably necessary to complete the attempt, in contemplation of the parties.

8. Specific Performance. Where time is not of the essence of the contract, or where time being originally of the essence of the contract is waived, a vendor who is unable to make title at the time he should convey may have specific performance by tendering a good title at any time before decree, provided he acted in good faith and specific performance can be enforced without injustice to the vendee.

Appeal from the district court for Merrick county: A. M. Post, Judge. *Reversed, with directions.*

*Patterson & Patterson, Elmer E. Ross,* and *W. T. Thompson,* for appellant.

*H. M. Morse* and *John C. Martin, contra.*

Heard before Letton, Dean and Aldrich, JJ., Clements (E. P.) and Dilworth, District Judges.

Clements, District Judge.

Plaintiff brought this action to recover the sum of $2,000, which he alleges he paid to the defendant under a contract for the purchase of certain real estate in

Merrick county, Nebraska, viz., the northeast quarter of section 30, township 15, range 4 west of the sixth P. M., and the further sum of $2,000, liquidated damages for an alleged breach of said contract. The breach alleged is that the defendant was unable to furnish a good marketable title on March 1, 1920, the day of settlement.

The defendant answered that his title was good and merchantable on said day; that the objections made to the title by the plaintiff were not valid, and that, in any event, the plaintiff, on the day of settlement, acquiesced in the defendant's proposal to cure the alleged defects, and thereby waived strict performance of the contract, as to furnishing a good title on that day; that the defendant within six days thereafter did cure such alleged defects, and was then and has ever since been ready, able and willing to perform said contract strictly in accordance with its terms, and prays for a specific performance of the contract.

The claim of the plaintiff for damages for breach of the contract seems to have been abandoned, for it is nowhere mentioned except in the allegations and prayer of plaintiff's petition. The case has apparently proceeded on the part of the plaintiff as an action for rescission and to recover back the money paid under the contract, and on the part of the defendant for specific performance of the contract.

The contract is set out in full in the pleadings, but the only provision we need to consider is the following: "The party of the first part is to furnish to the party of the second part, or assigns, a warranty deed and a good and sufficient abstract of title, showing a good title of record to the premises hereinafter described in the party of the first part on or before March 1, 1920. * * * It is mutually agreed that time is an essential element in this contract and it is further agreed that, in case either of the parties hereto shall fail to perform the stipulation of this contract or any part of the same,

the failing party shall pay to the other party to this contract the sum of $2,000 as damages for nonfulfilment of contract."

It will be seen that by express agreement of the parties, time is made an essential element of this contract, and it follows that if as contended by the plaintiff, the defendant, on March 1, 1920, could not furnish to the plaintiff a good title of record, and if the plaintiff did not, as contended by the defendant, waive this being done on that day, he was entitled to rescind and recover back his payment. "Parties to a contract for the sale of land may make time of its essence by a distinct provision to that effect in the contract." *Jewett v. Black,* 60 Neb. 173. Also, *Brown v. Ulrich,* 48 Neb. 409; *Morgan v. Bergen,* 3 Neb. 209; 39 Cyc. 1546, and cases cited under note 24; *Justice v. Button,* 89 Neb. 367.

There is no dispute as to the condition of the record title of this land on March 1, 1920, but there is a wide difference of opinion as to the legal effect of the facts shown by the record.

It is admitted that at one time this title was held by one George F. Krittenbrink, that on February 28, 1916, he conveyed the premises by warranty deed to C. W. Flesher and Jessie Flesher, and that said deed was duly filed for record and recorded in Merrick county on March 1, 1916; that on February 18, 1919, a judgment in the sum of $8,000 against said George F. Krittenbrink, and in favor of Mary F. Bergelt, was transcripted from the district court for Merrick county, and that thereafter on February 28, 1919, the defendant acquired title to the premises from C. W. and Jessie Flesher by warranty deed, which deed was duly filed for record and recorded in Merrick county March 3, 1919.

It was also admitted that on March 20, 1919, there was filed and recorded in the office of the county clerk of Merrick county an instrument purporting to be a notice of the pendency of a suit in Douglas county. This

instrument in substance says that on March 19, 1919, a suit was brought in the district court for Douglas county by Mary F. Bergelt and against George F. Krittenbrink, Caroline F. Krittenbrink, Ray S. Clayton and C. W. Flesher; that the plaintiff is the owner of the $8,000 judgment mentioned above; that the defendants, other than George F. Krittenbrink, hold in their possession and under their control property, both real and personal, of said George F. Krittenbrink for the purpose of hindering and delaying the plaintiff from collecting her said judgment, and that notice is given that Mary F. Bergelt claims that Ray S. Clayton, in whose name the northeast quarter of section 30, township 15 north, range 4 west, in Merrick county, is now held, is not the real owner thereof, but, in truth and in fact, the said Ray S. Clayton is holding said lands as the agent for George F. Krittenbrink, who is the real and true owner thereof, and prays that the defendants and each of them be required to transfer and turn all of said property to George F. Krittenbrink, and that it may be sold to satisfy said judgment and costs.

The judgment and this purported notice of *lis pendens* were both shown upon the abstract tendered to the plaintiff, and this fact constitutes the basis of the plaintiff's claim that the abstract did not show a good title of record in the defendant.

This claim, so far as it relates to the judgment, is easily disposed of. This judgment was filed in Merrick county long after the judgment debtor had transferred the land to another by warranty deed, and long after this deed had been properly recorded, and it could not affect the defendant's title or render it in any manner doubtful. It should not have appeared upon the abstract. *Whitfield v. Clark*, 97 Neb. 626.

The purported *lis pendens* presents another question. The defendant strenuously contends that the *lis pendens* shows on its face that the action in Douglas county is in the nature of a creditors' bill to set aside the title of

real property situate in Merrick county, and is not maintainable in Douglas county, and the Douglas county court having no jurisdiction, the notice of *lis pendens* is a nullity, and not subject to record, and not notice to any one.

We do not feel called upon to decide this question. It sufficiently appears that it is a question upon which legal minds may differ. The attorney who examined the abstract found and still contends that the Douglas county court had jurisdiction. The learned district judge, who tried the case below, was not satisfied that there was a want of jurisdiction. The writer personally is of the opinion that there was a want of jurisdiction, and that the record of the *lis pendens* imported no notice to one not acquainted with its contents. These conflicting opinions illustrate the wisdom of the rule that a title to be good or marketable must be free from reasonable doubt either in law or fact. 39 Cyc. 1452; 27 R. C. L. 490, sec. 208; *Turner v. McDonald,* 76 Cal. 177; *Townshend v. Goodfellow,* 40 Minn. 312; 39 Cyc. 1456, 1457, and cases there cited. We are satisfied that the claim of Mary F. Bergelt, as set out in the purported notice of *lis pendens,* raised such a doubt of the validity of the defendant's title as to render it unmarketable. We would arrive at the same conclusion if we were prepared to hold that the Douglas county court was without jurisdiction, and that the *lis pendens* was without validity and not subject to record. It was set out in the abstract and the plaintiff became fully acquainted with its contents. He acquired actual notice of the claim of Mary F. Bergelt and that she was attempting to establish this claim in Douglas county. He had every reason to expect that if she failed in Douglas county, by reason of want of jurisdiction in the court, an attempt would be made in Merrick county, and he knew that the knowledge that he had gained from the statements of the purported *lis pendens* would preclude him from defending against such an attempt as an innocent purchaser.

"It is a well-settled general rule, in determining whether a purchaser had notice of outstanding equities so as to preclude him from being entitled to protection as a *bona fide* purchaser, that if there be circumstances which, in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which that inquiry would give him." 27 R. C. L. 710, sec. 475. See *Galland v. Jackman*, 26 Cal. 79, 85 Am. Dec. 172; *Cooper v. Flesner*, 24 Okla. 47; *Barney v. Chamberlain*, 85 Neb. 785; *McParland v. Peters*, 87 Neb. 829. The recording acts have not abolished the equity rule as to actual and constructive notice. *Bourland v. County of Peoria*, 16 Ill. 543. We think the plaintiff was within his rights in refusing to accept the title as it was on March 1, 1920, and that his request for the cancelation of the *lis pendens* was justified by the facts.

After a careful examination of the evidence and all the surrounding circumstances in relation to the alleged waiver, we conclude that the testimony of the defendant, and his attorney, Mr. Ross, fairly outweighs that of the plaintiff and should be adopted as to the matters in dispute. The plaintiff practically concedes this, for he says in his brief: "We adopt the language of the learned judge, Honorable A. M. Post, set forth in his opinion filed in this cause in the district court for Merrick county, Nebraska." He then quotes from this opinion, and we find from its language that the learned trial judge adopted, as do we, "the version of the defendant and Mr. Ross as to matters in dispute."

The undisputed evidence and the evidence of the defendant and Mr. Ross as to matters in dispute establishes the following: The abstract in question was handed to the plaintiff about February 25, 1920, and by him turned over to his attorney for examination. This attorney wrote an opinion February 27, in which he called attention to the fact that the abstract showed the

filing of a *lis pendens* notice, and set out what this notice contained. The attorney makes the following recommendation: "In view of this *lis pendens,* I advise you not to accept the title at the present time. I can conceive of no way in which you can receive a good title to these premises at the present time, due to this condition." This opinion was not called to the attention of the defendant until the parties met at the office of Mr. Ross on March 1, 1920, for the purpose of closing up the deal, and no intimation was given the defendant until that time that the title was not acceptable to the plaintiff. On March 1, 1920, about 10:30 a. m., the parties met in the office of Mr. Ross, in Central City, for the purpose of closing up the deal. At this time the abstract and opinion of title were handed to the defendant, and by him turned over to Mr. Ross, his attorney, who examined the opinion and remarked that the only objection of consequence seemed to be the record of the *lis pendens.* The defendant then asked Mr. Ross to explain to the plaintiff about the *lis pendens.* Mr. Ross did this, stating what was set out in the *lis pendens* as to the Bergelt claim, and saying that the claim was untrue and that "we have checks to show we paid for it." Mr. Ross also told the plaintiff that he was satisfied that he could get Mr. Van Dorn (Mary F. Bergelt's attorney) to discharge this record. To this the plaintiff answered: "All I want is a clear title." Mr. Ross then said: "You are entitled to that, and we are willing to go any length to get it for you. We are willing to protect you in any way. Mr. Clayton will give you any kind of security you want that you will never have any trouble with this judgment, or rather with this litigation that is pending, and that the judgment will never become a lien against the property." To this the plaintiff answered: "What I want is to have the title clear before I make final settlement for the land." Mr. Ross then said: "I will call up Mr. Van-Dorn, if you say so, and find out if he will agree to release this *lis pendens* and discharge that action in the

district court for Douglas county, Nebraska, and if he will
agree to do that you can depend on it, because I believe
Mr. VanDorn is a man of his word, and we will know
then what we can expect." To this the plaintiff replied:
"That is all right." Mr. Ross, then, in the presence of
the plaintiff, put in a telephone call for Mr. VanDorn.
The parties waited in the office for some time, and, the
call not then being answered, left the office together.
Some time thereafter the plaintiff returned to Mr. Ross'
office and asked if the call had been answered, and being
told, "not yet," he again went away and apparently
returned to his home at Clarks, Nebraska, for about 7
o'clock that evening the plaintiff called Mr. Ross over
the telephone from Clarks and asked him if he had heard
anything from Omaha. Mr. Ross said: "Yes; I got in
touch with Mr. VanDorn late this afternoon; Mr. Van-
Dorn is busy in court, and I told him what we wanted,
and Mr. VanDorn said he would give us anything we
wanted; he would do anything we asked him to do to
fix up the title; that I had asked him to send out a
discharge of the *lis pendens* and dismissal, secure the
dismissal of the action of Bergelt against Krittenbrink,
Clayton and others then pending in the district court for
Douglas county, and send them out to me; that he said
he would, and that he would try to get in touch with
Mrs. Bergelt and get her to sign the papers personally;
he said he was prepared to do that, and I says, I can
absolutely depend on what Mr. VanDorn says, and these
papers will be out here in a short time; he is busy in
court and you can expect a little delay. That is the
substance of the conversation I had." To this the plaintiff
replied, "Have you talked to Jack (his attorney)? Did
you tell Jack?" Mr. Ross answered, "No." Mr. Ross
testified that to the best of his recollection the plaintiff
then answered, "I will tell him." No further negotiations
were had between the parties, but Mr. VanDorn did dis-
miss the Douglas county action and authorize a release
of the *lis pendens* notice. The action was dismissed on

March 4, and the *lis pendens* canceled March 6, and these proceedings were made of record in Merrick county and duly shown on the abstract March 6, 1920.

The learned trial judge found that this state of facts did not constitute a waiver by the plaintiff of the provision in the contract that an abstract showing good record title should be furnished on March 1, 1920. We think in this he erred. A careful examination of the authorities convinces us that the following general rules may be deduced from them. Though time is made of the essence of the contract, a default does not *ipso facto* terminate the· contract, but only renders it voidable at the election of the party entitled to insist upon its performance. 27 R. C. L., 452, sec. 166; 39 Cyc. 1345, and cases there cited; *Caldwell v. Smith,* 83 Neb. 567. A purchaser who instead of terminating the **contract acquiesces in the attempt of the vendor to** perfect his title waives the right to insist upon strict performance of the contract, at least for the time reasonably necessary to complete the attempt, in contemplation of the parties. 39 Cyc. 1535; *Garrison v. Newton,* 96 Wash. 284, 4 A. L. R. 804; *Hawes v. Swanzey,* 123 Ia. 51; *Bales v. Williamson,* 128 Ia. 127; *Stevenson v. Polk,* 71 Ia. 278. In view of these rules and the authorities generally, the conclusion is irresistible that, by acquiescing in the attempt of the defendant to perfect his title and by failing until after the attempt had proved successful to give notice of an intention to rescind, the plaintiff waived strict performance of the provision of the contract to tender on the day of settlement an abstract showing good title of record, and disabled himself from rescinding. It has not been **shown** that any injury or damage resulted to the plaintiff from the five days' delay in perfecting the title. Defendant at that time was ready, able and willing to perform the provisions of the contract. He brought the deed and abstract into court, and we think his cross-petition asking for specific performance should have been sus-

tained and an order for specific performance entered.

This court has adopted the general rule: "Where time is not of the essence of the contract, a vendor who is unable to make title at the time he should convey may have specific performance by tendering a good title at any time before decree, provided he has acted in good faith and specific performance can be enforced without injustice to the vendee." *Seaver v. Hall,* 50 Neb. 878. See *King v. Gsantner,* 23 Neb. 795. This rule is equally applicable to cases where time was originally of the essence of the contract but has been waived.

It appears from the contract that there were two mortgages upon the premises, which the plaintiff agreed to assume, but upon which the defendant was to pay all interest to March 1, 1920. It also appears that the plaintiff was to have possession on March 1, 1920. Upon a decree of specific performance the plaintiff would be entitled to the rents and profits of the land from March 1, 1920, less any interest on the mortgages and taxes paid by the defendant after that time, which he was not to pay under the terms of the contract. We are unable to adjust these equities, and therefore order that the decree of the district court be vacated and the cause remanded, with directions to permit the plaintiff to file a supplemental bill for an account of the rents and profits to be credited on the payment to be made by him, and to enter a decree accordingly for specific performance on the part of both the plaintiff and the defendant.

REVERSED.